Good afternoon, Your Honors. This is Meredith Watson. I'm appearing for Dennis Morris. I'm going to start with my Batson issue, if it pleases the Court. In this case, I believe that even though the Court reached a Step 3 analysis in his Could you try to talk louder? Oh, I'm sorry. The Court did reach Step 3 in his analysis, but he had the procedure all turned around. When it came time to choose the alternates in this case, the Court had already dismissed a jury and had started over again. And the Court had dismissed a first jury on the grounds that the Court did not feel that the four defense counsel were being honest. It was worse than that. He thought that they were not being honest and that they were racially motivated. He thought that they were striking Caucasian jurors. He thought they were getting rid of all the whites. And he used the numbers from the first, the aborted trial, as part of his judgment about whether they were being honest in the second trial. Why don't we have to defer to that? We don't have to defer to that, Your Honor. Why not? Well, because, first of all, when he made the comparative analysis, that was based on the jurors that were seated and the would-be jurors who were challenged in that jury veneer. Is there some case that says the judge can't consider what the lawyers did in a previous jury selection in the same case? Well, to the extent that the Court of Appeals and the magistrate said that it was the Court's comparative analysis that was to be relied upon to support what the Court did in the second jury selection, I think that that was a mistake. Let me flip it for you. Suppose that you had a prosecutor. For years, he had been training the assistant DAs, strike all black people. Don't let blacks on your jury if you can possibly get rid of them. And then there's a trial, and one of the assistants strikes a black person from the jury. The defense puts in affidavits from people that used to work in that office saying this is the training in that office. We're trained to strike all black people. The judge says, based on what's been going on in the office generally and the training these assistants have, I think that this strike was racially motivated. Are you saying he could not do that? He has to just focus on the trial in front of him? Well, that's a swing analysis, Your Honor. And I don't think we have anything like that here. We don't have a background of these particular, extremely experienced, by the way, four defense counsels having been accused of racially motivated actions in previous trials. Well, isn't it even worse if it's in the same trial? I mean, it's closer. Well, you know, conditions changed when they started over with this particular jury selection. First of all, the Court decided that each of the four defense counsels was going to have his own peremptories. There weren't going to be joint peremptories. And so the Court was presumably giving the four defendants their, quote, separate trials, as the Court was obligated to, having denied their many efforts to be severed. But the Court still held against each of the four the strikes that the others made. And I think that the Court was wrong in doing that. Well, I know you think it was wrong. That's your position. But would the Supreme Court of the United States think it wrong? Yes. First of all, as you know, in Yee v. Duncan, you all have said that it's the burden of the party that is opposing the strike that must carry the day. And in this case, the Court barely gave the prosecutor a chance to speak. Is that a decision of the United States Supreme Court? That's one of your points. Well, I think that it's directly contrary to both Miller L. v. Stretke and Batson itself for the Court to do what it did in this case, which was to take over the process. The Court solicits it. To do what? The Court took over the process. And the Supreme Court has said that may not be done? Well, the Supreme Court has said that in the three-step analysis. In the second step. I can do what the Supreme Court has said. You may not racially discriminate. And I don't attach a great deal of importance to steps. I mean, that's the Supreme Court often gives you little things. And you don't have to follow those religiously as long as the main thing is not to do what's forbidden. Well, Your Honor. I mean, I just couldn't understand what your basis for an appeal was. Well, Judge Noonan, just let me say that in this case, the trial court felt apparently based on some of the comments that it made that it had an obligation to preserve a cross-section of the community. And that is not what the Supreme Court has said. Well, but is it wrong to do that? I think that the Court has said that it certainly can't look at the fact that there are already seven African-Americans on the jury and say, oh, no more African-Americans because there are already a majority. But say with the facts at hand. Those are the facts at hand. I didn't see where the judge said there has to be balance. It read to me like the judge was saying you can't get rid of all the whites. And he said the only excuse you're giving me for getting rid of this white is an excuse that would apply equally well to some non-whites that you left on. And I don't believe you. That's what the judge said. Well, you know, the Court was not saying that with respect to the strikes that really matter in the second jury selection. Well, there's really just one strike that matters, the second alternate that wound up on the jury. That's right. That's the one we're talking about. And that's what he said about her. That, in fact, was my counsel's, my client's trial counsel who tried to make that strike against that young woman first. And, by the way, there is no other member of the veneer with a long-term close personal association with a member of law enforcement. She was comparable to no one. And each three of the four defense counsels tried to strike her. I thought the record showed that she had a friend who was a jail guard, but so did some of the non-whites. That's not true, Your Honor. She had a close personal relationship with a deputy sheriff. And it is true that some of the non-whites also knew some law enforcement, but it was not the same kind of long-term personal relationship that she had. Also, she was afraid of the defendants. She did not want to sit on a murder trial. She doesn't like gangs. She lied about that. What do you mean afraid of the defendants? She said she was afraid of the defendants. She said on Vardyar that she feared gang members and she feared these defendants. Wait, wait. Afraid of the defendant. None of us probably are that enthusiastic about criminal gangs, but afraid of the defendant is something a little different. What page of the – I missed it. What page of the excerpt did I look at? No, I don't have that in my notes with me. I'm really sorry. I would have to – I can send it to you. I mean, the fact that somebody doesn't like crime doesn't make them biased so that they shouldn't be on a jury. Well, she had a cluster of – she had a cluster of characteristics that, taken together, if the tables were tipped and some prosecutor wanted to dismiss her, it would be supported in a moment. I think that it was entirely unfair for the court in the four separate trials context to hold the various strikes that the various defense members were making against all of them. That's simply wrong. And the court was by then not impartial. Do you have some authority? For that? For it being simply wrong to consider the other strikes? To consider – excuse me? You mean when – If I understood you right, you said considering the other strikes was simply wrong. And I didn't know it was, so I want the authority. If – at this point, they had run into a lot of trouble in the second jury selection – I mean, the first jury selection after he'd already declared one mistrial with the defense counsel having to confer about who they would strike. And they decided not to do that anymore. And the understanding was that each of them was proceeding separately. So I don't understand how the judge had the right to hold the various strikes against the other people. And furthermore – I know you have conveyed a great sense of your feeling it was inappropriate. But, you know, we're not here to understand what you feel is right or wrong, but what the Supreme Court has said. Yes. And what Supreme Court says he couldn't have done that? Well, the Supreme Court has said that the burden of showing that there is discrimination – I thought that was a Ninth Circuit case. – is on – Miller L. says that. All right. Go ahead. The burden is on the party opposing the strikes. And the court took the process over. And the comparative analysis the court did was not applied to this case – to this jury selection. It was the prior one. And my client's trial counsel was only on her second peremptory when the court decided she was getting no more. Counsel, when I did criminal defense, usually they made us share our strikes. The judges made us share our strikes so we'd fight about who to strike. If we had been allowed separate strikes, as we sometimes were in civil cases, sometimes we would confer and, okay, you strike this one and I'll strike that one. Why can't the judge just make his own judgment about whether this is a coordinated pattern or whether it isn't? Well, I don't think it was relevant either, Your Honor. I don't understand why the judge felt that – Well, sure, it's relevant. I mean, if you agree on it, we're going to get rid of all the white people. You strike, you strike, you strike, and I'll strike, then it seems to me it would be perfectly appropriate to hold what the other lawyers did as to be part of a pattern. So you're saying that when those four counsel made their impassioned speeches to the judge about how they were telling the truth, that they were to simply be disregarded even though they're officers? Did he disregard them? I thought he just didn't believe them. Well, he basically said, you made that up. Don't we have to defer to that? You know, not where it's turned around this way, Your Honor. This judge had become – What do you mean turned around? You mean whites being struck instead of blacks? No. This judge had taken over this process. He had become the advocate. And he had decided himself that he was going to hold sidebar, take these motions on sidebar. A trial court judge has ample discretion to do that. Yes, but – He doesn't have to force the lawyers to stand up there in front of the jury and say, Your Honor, I challenge that strike because he's obviously discriminating against juror number X because she's white or because she's a woman or because she's black or because she's brown. We do that all the time as district court judges. All strikes are exercised at the sidebar for that very reason. Well, I – There's nothing to stop a superior court judge, based on my experience from working in the state court. I'm in the muni court and on the superior court when I was a state court judge. I have no problem with the sidebar either. It's just that when they went to sidebar, the court didn't require the prosecutor to make any kind of a case. I mean, the court was just doing this on its own. The court was deciding the whole thing. Well, you know, the judge doesn't sit there like a bump on a log. Well, it sort of rubs me the wrong way that the prosecutor didn't have to make any sort of effort to – it seems to me you have your parties and then you have the judge. And once the judge goes over and sits down with one of the parties, then you don't have a very good process. Did the judge go over and sit down with one of the parties? Might as well have. Wait. Did the judge go down and sit down with one of the parties? No. I mean, sometimes in this court you see it where one party's argument hasn't gone so well and then the other one stands up and says, unless the court has questions, goodbye. Happens all the time. It's just part of lawyers' tactics. I'm having trouble seeing the error. You're having trouble seeing the error that the trial court made here? Is that what you're saying? That's right. Okay. Well, I guess I haven't convinced you. I think the judge used an improper standard because he was focusing on a cross-section of the community, which is not what Batson requires. I think the judge did the wrong thing against the rules when he took over the process and solicited the Wheeler motions from the prosecutor. I think the judge was not impartial. He could no longer make a fair and good-faith determination whether the reasons were just that the defense counsel gave for their strike. No, no. You don't think it's a prerogative? Well, never mind. Your time is running out. You probably should ask the other issue. Okay. You don't waive anything by not arguing it. Everything is preserved. Well, in my brutal issue, I would just like to say that the issue here is the right to meaningful cross-examination. I didn't understand your brutal issue. The problem in a brutal issue case is an admission of one party comes in against another, and the other doesn't get to cross-examine. Here, both the jailhouse informant and Knighton testified subject to cross, so I just don't see any brutal issue. Well, in this case, Your Honor, Knighton completely denied that he made the statement that the jailhouse informant testified to. Yep. One of them may be lying. Now, a cross is four. I mean, doesn't that dissipate the whole brutal issue because you got cross? But, Your Honor, if a person gets on the stand and completely denies that he's made the prior statement that you feel is implicating your client, how can you cross-examine him on a statement that he says he didn't make? How can you say, okay, on this statement that you didn't make, when you said we all took turns. Gee, it seems kind of easy to me. You say one thing, the prosecution's other witness, the jailhouse informant, says another. One of you at least must be lying. You may both be lying. You're both criminals. Why should the jury believe either of you beyond a reasonable doubt? I don't understand. Well, they did some of that. You get cross. They're under oath. What's the problem? The problem is that we have three cases, Bruton, Douglas v. Alabama, and Nelson v. O'Neill, that when you read them together say that if the person who's taken the stand completely denies that he made the statement, then there's no effective cross-examination of that witness. I don't remember Bruton saying that. Douglas says it. Oh, Bruton doesn't say it. Bruton quotes Douglas saying that. The Douglas case says, effective confrontation of a witness who has allegedly made an out-of-court statement implicating the defendant was possible only if he affirmed the statement as his. And, you know, cross-examination has to be meaningful for it to have, for confrontation to have any content at all. If the person, unfortunately, Christian Knighton is not. I thought in Douglas the witness asserted his privilege and refused to answer. That's right. But in this case, Knighton and the jailhouse informant did not assert their privilege and refused to answer. They testified and were fully subjected to cross. Yes, but Knighton said he hadn't made the statement. So how can he be crossed about the statement that he says he didn't make? You're saying I never said that is the same thing as refusing to testify and asserting the Fifth Amendment? For these purposes. I understand now what your case is. We're way over, so unless my colleagues have further questions. Thank you, counsel. Morris v. Terhune is submitted. Oh, I'm sorry. I got mixed up about which side had gone. Good afternoon, Your Honors. May it please the Court. I'm Roy Preminger, appearing for the Respondent. I'll also address the Batson issue first. I have to agree with the trial court, because I've been doing criminal appeals for about 30 years, that this is the most blatant example of Batson violations I've ever seen. The judge said the most blatant example of Batson violations he'd ever seen after being on the bench for 15 years. At the first trial, 11 out of 15 peremptories by the defense were exercised against Caucasians. The second time around, when the first Wheeler-Batson motion was made, six out of eight peremptory challenges had been exercised against Caucasians. The two remaining ones had been exercised against Asians or Asian Americans. As the judge said, you don't want Caucasians and you don't want Asians on this jury. And given those numbers, the judge did exactly what was prudent and legally proper. He did not want to have another mistrial. These defense attorneys obviously conferred on these peremptory challenges. They obviously blatantly were in collusion to excuse, under the guise of peremptories, all the Caucasians and Asians that they could. Some of the reasons were so blatantly spurious. One of the reasons given by one of the attorneys was, I want to exercise a peremptory against this Caucasian juror because the juror lives in La Crescenta, and I've got a problem with people who live in La Crescenta. They're prosecution-oriented. Then another challenge was, I've got a problem with people who live in Whittier, and this juror lives in Whittier because people in Whittier are prosecution-oriented. And the judge found this to be absolute nonsense. These were just blatantly nonsensical and clearly racially-motivated challenges. The judge did what was right. He didn't want to reward the judge. of the defense with a second mistrial and have to start selecting a jury a third time. With regard to prospective juror, alternate juror number two, who ultimately sat on the jury, the defense gave their reasons, and the judge didn't buy them because there were other African-American jurors who shared the same characteristics. There were a couple of African-American jurors who had close association with people in law enforcement. They were left on the jury. There were three African-American who were left on the jury who had been victims of crimes. So when you add in the shared characteristics with jurors who are left on the jury and the shared numbers of obviously racially-motivated challenges, I think you have to conclude that the trial court is absolutely correct in denying the peremptory challenge to prospective alternate juror number two. And as far as the claim that the judge was taking over the proceedings and was not giving the defense any more peremptory challenges, the fact is that after the peremptory challenge to prospective alternate juror number two was denied, the prosecutor made two Wheeler-Batson motions when the defense exercised peremptory challenges against two additional prospective alternates, and the judge denied those Wheeler-Batson motions and allowed the defense to make the peremptory so that the judge had not shut down the defense's ability to exercise peremptories against Caucasian prospective jurors or prospective alternates when they were not racially motivated. As far as the severance issue, as this Court has pointed out, co-defendant Knighton testified he was subject to cross-examination. It couldn't be any simpler than that. Nothing could have been more beneficial to the three co-defendants, Morris, Culbertson, and Lujan, than his getting on the stand and saying, I never said any of those things that the jailhouse informant Ramirez said, and the three defendants didn't participate in the murders. I did it all by myself. There's nothing. They could not have elicited any more beneficial testimony. If they had been tried separately, there's a chance that Knight might not have testified and they wouldn't have had the benefit of that testimony. They got the benefit of it. They've got no legitimate basis for complaint, and there was no improper interpretation of United States Supreme Court precedent or any misapplication of the facts by the State Court of Appeal. The other fellow, what was his name, the jailhouse informant? Ramirez. Ramirez, he testified too? Yes, he testified. So they both testified subject to cross? They both testified. They were both subject to cross-examination. Did they ever assert their privilege and refuse to answer questions on cross? Neither. Never did. There's a long portion in the record where Knighton's defense attorney is pleading with him not to take the stand and stating on the record why he shouldn't take the stand and he doesn't want to take the stand. But Knighton insisted. He waived his privilege against self-incrimination, and he got up there and he said, I did it all by myself, and the three co-defendants had nothing to do with it. Could I ask a procedural question? In your brief to Mr. Morrison's appeal, you raised a couple of procedural arguments about ground or asserted basis for why the severance issue was not viable, and you said that some of these arguments had not been raised in the district court. Yes. I didn't take that to mean that you were raising an exhaustion issue. Is that right? No, not at all. It's just that they were raised for the first time on appeal. In this appeal, I enumerated 14 grounds, and I think there were one or two others that were raised for the first time in the traverse. No, I'm not making a claim of failure to exhaust. In the traverse, opposing counsel said, I really did raise these claims in the district court because I appended my petition for review that was filed in the California Supreme Court, and those grounds were raised in there. But there's nothing in the habeas petition filed in the district court saying I'm incorporating by reference whatever claims I have in the petition for review. It was attached apparently as an exhibit. But as this court knows, it's certainly possible to incorporate by reference or attach additional sheets raising additional claims that were never raised, and consequently they really weren't addressed by the district court. Some of them are subsumed within the district court's analysis. Some of them are because they're also raised by Culbertson, and they were properly raised by Culbertson. As I pointed out in a footnote in our appellee's brief, we responded on the merits to those claims raised by Culbertson because they were properly raised, but they're not properly raised by Morris. But in any event, the whole – the gist of the whole claim is that Morris was denied effective cross-examination of Blighton, and that simply is not the case. Okay. I just wanted to make sure it wasn't an exhaustion claim. No, Your Honor. Okay. Thank you. Thank you, counsel. We went way over time with you, but take 30 seconds. Yeah. I'd just like to say that my client is a Caucasian, and he's Irish, and the other defendants were two Hispanics and a Native American, and they were lumped together in the jail by the deputies because they were running with a Hispanic gang. And when my client's counsel tried to raise to the court that the prosecutor was striking a lot of Hispanics, the judge said, I'm not talking to you. He was so angry at her that even though he went ahead and allowed Wheeler motions as to two other defense counsel's objections after alternate number two was denied, she tried to strike yet another veneer man, and the court did not allow it. My client's trial counsel was the only black person in the room except for the people on the jury. I don't remember that being developed in the blue brief. What? That she was the only black person? That your client was white and Irish in the citation of the record, and that that mattered. I'm telling you that now because I think it does matter. Yes, I did say that. It seems to me that. It was in the blue brief? Yes. Thank you. Thank you, counsel. Morris v. Carhoon is submitted. And we'll hear Culbertson v. McGrath.
judges: Noonan, Kleinfeld, Paez